Samuel H. Hoestadter, J.
By this motion, made on behalf of the corporate plaintiff, Glenmark, Incorporated (Glenmark), it is sought to substitute for its present attorneys an attorney who shares offices with and has the same telephone listing as *981 the attorneys for one of the two defendants. Shortly after this motion was originally brought on in January, 1962, the plaintiffs obtained an order pursuant to section 307 of the Civil Practice Act, for the taking of the depositions of three individuals who had refused to make affidavits for use in opposition to the motion. The depositions of these witnesses, running to 673 pages of testimony, were taken pursuant to the foregoing order. The main motion has remained undetermined pending the conclusion of these proceedings and was finally submitted only recently.
The action is at law to recover $3,250,000 damages for breach of an oral agreement of a sales-advertising venture for the sale of Florida lands known as “ Rainbow Ranch Estates ”, in which the plaintiffs claim a 50% interest, Glenmark’s interest being 121/2%. Glenmark is a New York corporation organized in 1958 by three individuals, Kushins, Anderson and Takaro, engaged in the advertising business under another corporate name, for outside ventures in which they participated. At the time of Glen-mark’s incorporation, only 30 of its 200 authorized shares were issued, 10 to each of the three above-named individuals, and these 30 shares alone had voting powers. The same individuals and an employee constituted the directors and Kushins was elected president. Nothing in the certificate of incorporation or by-laws prohibited the president from retaining counsel to represent the corporation in litigation. Later a certificate for the remaining 170 shares was issued to the corporation’s accountant, as escrow agent under an agreement, but, so far as appears, this escrow agreement has no bearing on the present issue.
The plaintiffs all appear by a firm of attorneys retained on March 11, 1961, by written agreement. Kushins signed this retainer on behalf of Glenmark, as its president. Anderson was present with Kushins at the office of the attorneys at the meeting of March 11, 1961, attended by all the plaintiffs, though he left before Kushins signed the retainer. Whatever Anderson’s and Takaro’s present attitude, as revealed in their depositions, it does not appear that contemporaneously they did anything concrete in disaffirmance or disapproval of Kushins ’ action, as president, in retaining the attorneys. Since, as will soon appear, Anderson and Takaro are no longer stockholders of Glenmark, Kushins’ authority to retain the attorneys, insofar as called into question at all, is done so, not by them, but by the present owners of their stock, bought several months after the retainer was signed.
This action was instituted on May 8, 1961. On July 5, 1961, Anderson and Takaro sold their Glenmark stock to Trieff Corp., *982 a New York corporation, organized on June 29, 1961. This corporation is owned by the defendants Carity and Hoffman, and its directors are these defendants, one Howard W. Friedman, now a partner of the defendants, and the fourth director is a member of the firm of attorneys who represent Carity in this action — the attorneys whose offices the proposed attorney for the plaintiff Grlenmark shares. Before this sale, there had been an intervening sale of the stock to and resale from the counsel to Kushins, Anderson and Takaro, the details of which need not be recited here. The critical fact is that beneficial ownership of the stock, two thirds of Grlenmark’s voting stock, is now in the defendants Carity and Hoffman, who wish to exercise the corporation’s right to substitute attorneys, so that the substituted attorney may, on their instructions, discontinue the action. The purpose to discontinue the action is explicitly stated in the letter of July 19, 1961, to the present attorneys for Glenmark, signed by the president, Friedman, forming part of the papers in support of the motion for substitution.
A strikingly similar situation was recently before the Court of Appeals. Suit was instituted in the name of the corporation by one of the three individuals who owned and controlled it; he was its president, a director and a one-third shareholder. As here, the action was against the other two directors, who constituted a majority of the board and owned the other two thirds of its stock, for alleged breach of fiduciary duty in improperly paying out corporate funds. The court held that the action was ‘ properly instituted by the president in the name of the corporation, in the exercise of his implied authority to protect and preserve the interest of the plaintiff corporation ” (West View Hills v. Lizau Realty Corp., 6 N Y 2d 344, 348; see, also, Rothman & Schneider v. Beckerman, 2 N Y 2d 493; Matter of Paloma Frocks [Shamokin Sportswear Corp.], 3 N Y 2d 572). These authorities fully uphold the implied authority of Kushins, as president, in the circumstances facing him on March 11, 1961, to execute the retainer agreement on behalf of Grlenmark, pursuant to which it became plaintiff in this action, to redress a wrong asserted to have been done to the corporation by Carity and Hoffman, then strangers, who only later contrived to take over control.
No replying affidavit denies the defendants’ present majority control of Grlenmark or attempts to explain away the transparent implications of such control. It is asserted rather that these are irrelevancies which do not concern the court on this motion for substitution of attorneys. It is said, too, that whether the present attorneys for Glenmark were properly retained is no *983 longer the issue, for, whether they were or not, Glenmark today has the absolute right to supplant them with a new attorney, even though the avowed purpose of the replacement is the abandonment of the action. In the circumstances here shown, the contention proves too much. The court cannot blind itself to the actualities of the situation. Substitution is being asked, not on behalf of Glenmark, a plaintiff in the action, but on behalf of the defendants, so that- Glenmark will be compelled to drop the suit and the rights of its minority stockholder sacrificed. Equity forbids such perversion of the right to substitute attorneys.
The fiduciary duty of majority stockholders has often been stressed and enforced by the courts (Kavanaugh v. Kavanaugh Knitting Co., 226 N. Y. 185,195; Pepper v. Litton, 308 U. S. 295, 306-307, 311-312; Matter of Rank Organization Ltd. v. Pathe Labs., 33 Misc 2d 748, 753; Warnecke v. Forty Wall St. Bldg., 8 Misc 2d 317, 323; Ribakove v. Rich, 13 Misc 2d 98, 101-102). It is plain that the defendants are violating this duty in utilizing their majority power not to serve Glenmark’s interests, but their own, in hostility to those of Kushins, the minority stockholder. A similar move was repulsed in Golconda Petroleum Corp. v. Petrol Corp. (46 F. Supp. 23, 25-26).
Another ground advanced for the substitution is that Kushins can enforce his rights as a minority stockholder in a derivative action. A like contention was made and rejected in West View Hills v. Lizau Realty Corp. (6 N Y 2d 344) already cited. The court commented (p. 347): u This is not the classic situation requiring resort to a stockholders’ derivative action to protect minority interests. To be sure, President Zaubler, as an individual stockholder., is now in the minority, but that fact does not deprive him of his right and duty to perform the obligations and functions of his office as president, nor does it prevent the corporation, as a corporation, from commencing an action in its own behalf simply because a majority of its board of directors are in a position to withhold authorization.”
There is a cogent, additional reason here why Kushins should not be relegated to a stockholder’s derivative suit. There are four other plaintiffs in this action, who together claim ,a 37%% interest in the joint venture; as already stated, Glenmark claims a 12%% interest. All assert the same grievance, breach of the oral joint venture agreement, and, even were Glenmark eliminated, the other plaintiffs would proceed with the action notwithstanding. Manifestly there should be only one trial, not two, of these issues. Were Glenmark dropped as one of the plaintiffs, a derivative suit brought by Kushins would in all probability *984 be consolidated with this one. No slavish adherence to formalism can justify a requirement of such circuitous procedures. Common sense dictates that Glenmark remain as plaintiff in this suit, now pending for almost two years, to enforce whatever rights it may have, irrespective of the ultimate division between Kushins and his fellow stockholders of the recovery, if any.
The further suggestion that representation of Glenmark by its present attorneys involves conflict of interest on the part of these attorneys, because they appear for Kushins and the Tyarks plaintiffs in actions brought against them by Glenmark, as agent, under another joint venture agreement, lacks merit. Analysis persuades the court that the alignment of the parties is the same throughout — Kushins and the Tyarks, represented by their attorneys in this suit, opposed to the defendants, Carity and Hoffman, whether acting in their own names or in the name of Glenmark. There is no true inconsistency or conflict. Moreover, in no case should the court permit a substitution by which control of the plaintiffs’ interests in the action is turned over to the defendants.
The motion for substitution is, therefore, denied.