Richard D. Simons, J.
This action seeks specific performance of an agreement executed by the plaintiff corporation and all its shareholders. Plaintiffs seek to have it determined that the defendants must sell all of their stock to the plaintiff corporation or in the alternative, to the plaintiff Vecchiarelli and further that defendants be enjoined from selling any of the corporate assets or dissolving it pending transfer of the stock.
Cicero Industrial Development Corporation was formed in 1968 for the purpose of buying real property in the Town of Clay, New York and developing it for industrial lease and sale. The original stockholders (and they remain the same today) are the plaintiff Vecchiarelli 30 shares, defendant Pino Marzocchi 15 ¡shares, defendant Ser afino Marzocchi 15 shares, defendant Roberts 30 shares, and defendant Georgianni 30 shares. Plaintiff Vecchiarelli is secretary-treasurer of the corporation.
At the time of incorporation, the shareholders signed the *567 agreement involved in this litigation. It provides that no shareholder may sell shares of .stock owned by him unless he first offers to sell his stock to the corporation at book value as defined in the agreement. The offer must be in writing and specify the number of shares offered and a copy of the written offer must also be sent to the other .shareholders. The corporation has 30 days from the date of the offer to accept or reject part or all of the offer. If the corporation fails to accept the offer or rejects it, the selling shareholder is then deemed to offer the stock so rejected to the other shareholders who have 10 additional days in which to act. If the shares are not purchased by the corporation or the other shareholders, they may be sold to outsiders free of restriction.
Bach shareholder, with the Marzocchis being considered as one, paid $100 a share for the stock. In addition, each shareholder invested loans up to $10,000 in the corporation.
In 1968, Cicero undertook construction of a building on its property for Pluidicon Corporation. Defendant Pino Marzocchi’s construction men performed a portion of the work and he is a creditor of Cicero. There are also claims against him by Cicero of some claimed defects in the work. The building was substantially completed but Pluidicon went bankrupt and the building remained empty until General Electric Corporation leased it in 1969. During the period of its operation, the corporation acquired debts for legal fees, accounting services, construction work and so forth and there also remain mortgage liabilities for the construction of the Pluidicon Building and a purchase-money mortgage to the owner of the land. The corporation’s income during its period of operation consisted of rent from General Electric, funds derived from the sale of a parcel of land to one Stevens and the sale of an easement to Niagara Mohawk Power Corporation.
The corporation’s shareholders met frequently, but irregularly, throughout the entire period of its operation. There were never any minutes kept of the corporate meetings and the evidence of what transpired as to all of these meetings is necessarily dependent upon recollection of oral conversations. First and foremost at most of the meetings was the question of how to .solve the company’s financial difficulties. The remedies suggested included refinancing, sale proposals to various interested parties, including Taft Industrial Park, Inc., an adjacent land owner.
It is the position of the plaintiff Vecchiarelli that he participated in all of these meetings in an effort to resolve financial difficulties of the corporation, but that his position was con *568 stant, that he wished to keep his stock and that if he were financially able, to purchase the defendants’ stock. During most of this period, he was unable to buy but as of late February or early March, 1970 he secured loans .sufficient to purchase the stock at a price comparable to Taft’s and demanded that the remaining shoreholders sell to the corporation or him according to the shareholders ’ agreement.
It is conceded by the defendants that all of them signed agreements to sell their stock to Taft Industrial Park, Inc. and some of them also agreed to sell to other outside purchasers. It is admitted that these attempts to sell were done without complying with the literal terms of the contract and that no offer was ever made to the corporation’s stockholders or to Vecchiarelli (although Marzocchi claims that he orally offered the stock to Vecchiarelli and that Vecchiarelli said he was unable to purchase it). In any event, no offer was ever made in writing to either of the plaintiffs.
It is the argument of the defendants that the contract is void and was executed under a mutual mistake of fact in that none of the signers realized that they might be compelled to sell their stock at book value. The contract is clear and unambiguous in this respect and cannot be varied orally. It is also clear that the parties understood their mutual obligations throughout but defendants did not offer to sell because the corporation was insolvent. Defendants thought Vecchiarelli was unable to buy and necessarily would sell his stock also.
Defendants contend that the corporation may not maintain this action, that Vecchiarelli is the real party in interest, that the corporation is insolvent and unable to perform and that the agreement setting a book value repurchase price is unconscionable and unenforceable.
The corporation is suing persons owning 75% of its stock and a majority of its board of directors, including its president and vice-president, at the instance of its secretary-treasurer, plaintiff Vecchiarelli, owner of 25% of the stock.
Nothing called to the court’s attention indicates that the certificate of incorporation or the by-laws of the corporation either authorize or prohibit institution of a suit on behalf of the corporation by an officer.
There is presumptive power in a president to institute litigation on behalf of the corporation even in situations where he is outnumbered by other shareholders or directors, where the suit is against corporate insiders, as opposed to outsiders, and where no emergency exists. (West View Hills v. Lizau Realty Corp., 6 N Y 2d 344; Matter of Paloma Frocks [Shamokin *569 Sportswear Corp.], 3 N Y 2d 572; 46 Cornell L. Q. 159.) Such suits are authorized as necessary steps to preserve and protect the corporate interests. The officers’ right to sue maybe rebutted by action of the board of directors or by specific limitations in the by-laws or articles of the corporation (Sterling Ind. v. Ball Bearing Pen Corp., 298 N. Y. 483) and presumably, the board of directors could subsequently demand withdrawal of the suit by appropriate action. But the power of the board is to be used to serve the corporation’s interests, not that of the individual stockholders. (Glenmark, Inc. v. Carity, 38 Misc 2d 980.)
A corporation has separate, independent legal rights. (West View Hills v. Lizau Realty Corp., supra.) The preservation of those rights ought to be one of the. highest aims to those entrusted with management of the corporation. In this instance, the corporation’s rights specifically included stock repurchase options under the stockholders’ agreement to preserve the corporate integrity. The intention of the defendants here is to consummate a sale of stock in direct contradiction of the shareholders ’ agreement. Absent express prohibition, an appropriate officer may institute corporate action to protect the corporation’s assets without board approval and without the necessity of resorting to a derivative action with its drawbacks. (37 St. John’s L. Rev. 29, The Authority of the President over Corporate Litigation: A Study in Inherent Agency by Roger J. Goebel, pp. 78-79.)
If the president is the general manager of the corporation, there is little doubt that he has broad powers to sue under orthodox agency rules. He may also have such power as an inherent incident of the presidency. (37 St. John’s L. Rev. 29.) It has been held that one assuming de facto the authority of the president or general manager has similar authority. (Rothman & Schneider v. Beckerman, 2 N Y 2d 493.) This is particularly permissible to preserve corporate assets or prevent factional disorder. (37 St. John’s L. Rev., pp. 50-51.)
It is clear that the day-to-day operation of the corporation was the responsibility of plaintiff Vecchiarelli. He hired attorneys, negotiated contracts and leases and handled its affairs. The defendants themselves recognized his managerial efforts by conceding that he was entitled to more money than they were for his equal share of stock because of the time and effort he had expended in operating the business. Meetings were frequent in respect to sale of the property. Those meetings were not concerned primarily with the day-to-day management of the business. They were centered primarily on the interest *570 of the defendants in withdrawing from the corporation to salvage an investment and not to preserve the corporation or further its interest. Thus, the stockholders’ meeting called for March 17, 1970 and enjoined by this court sought as its purposes to dissolve the corporation and sell all its assets to Taft by % vote of the stock. It was an attempt to circumvent the shareholders’ agreement at a time when the corporation or Vecchiarelli was able to exercise rights granted under the shareholders’ agreement, and at a time when at least one of the defendants held a financial interest in Taft.
The corporation may maintain the action.
Restrictions on the sale of corporate stock are recognized by statute (Business Corporation Law, § 514) and effectuated by the courts (Allen v. Biltmore Tissue Corp. (2 N Y 2d 534; 7 Buffalo L. Rev. 103). Specific performance is available in an appropriate case to enforce such agreements even when the transfer to the third party has been completed. (Tomoser v. Kamphausen, 307 N. Y. 797; Oppenheim Collins & Co. v. Beir, 187 Misc. 428.) Since determination of the price for repurchase is a contractual matter voluntarily agreed upon by the parties, the court’s scope of inquiry is limited to testing the reasonableness of the price formula. (Allen v. Biltmore Tissue Corp., supra.) Book value prices have consistently been approved by the courts. (Allen v. Biltmore Tissue Corp., supra; Aron v. Gillman, 309 N. Y. 157; Claire v. Wigdor, 24 A D 2d 992, affd. 18 N Y 2d 687.)
The corporation has no funds to purchase this stock (unless Vecchiarelli is to loan them the money he has borrowed). It is a .reasonably safe assumption that this stock will be bought by Vecchiarelli after the corporation rejects it because of the solvency requirements of section 513 of the Business Corporation Law. Possibly at the “time of performance”, the corporation may be able to buy. (Business Corporation Law, § 514, subd. [b].)
Even if it cannot, that is no impediment to the maintenance of this action. The corporation has a right to demand performance, the offer to be accepted by it if it can perform, or by remaining stockholder if it cannot.
It is claimed by the defendants that the plaintiff Vecchiarelli, by his own actions, waived enforcement of the sale restrictions and is now estopped. His actions could not result in a waiver or estoppel of the corporation’s rights under the circumstances here. Nor did his acts result in a waiver or estoppel of his own rights.
*571 A waiver is an intentional relinquishment of a legal right. (21 N. Y. Jur., Estoppel, § 66.) The intention must he clearly established and cannot be inferred from doubtful or equivocal acts or language.
Participation in meetings when various alternatives of sale, refinancing or repurchase were discussed and the negotiations with prospective purchasers were not sufficient to infer a waiver. The corporation was financially troubled. Various forms of relief were discussed but the need for unanimity was always understood by the shareholders and Vecchiarelli’s desire to continue in the corporation was expressed on more than one occasion. In addition, the shareholders’ agreement requires any amendment of the agreement to be in writing.
An estoppel differs from a waiver. An estoppel arises when a person engages in conduct which is calculated to convey the impression that the facts are otherwise than and inconsistent with those which the parties subsequently attempt to assert and which conduct is engaged in with the intent of expectation that it will be acted upon by another. (21 N. Y. Jur., Estoppel, § 21.) Defendants claiming an estoppel must prove their lack of knowledge of the true facts, good faith on their part, reliance on the conduct of Vecchiarelli and action based on that reliance resulting in prejudice. (21 1ST. Y. Jur., Estoppel, § 60.) There was no fraud or misrepresentation upon Vecchiarelli’s part. The fact that he offered to sell at a price which was not accepted and later, when financing was available, changed his mind, does not create an estoppel. The defendants were aware of his wishes. They hoped he would join them and not insist on enforcing the agreement. But it was always apparent to everyone that Vecchiarelli’s position was not fixed or certain. He insisted that if he was to sell he must receive more money than was offered the others. Defendants agreed with him and proceeded on their own, leaving it to Vecchiarelli to negotiate his own sale price. The contracts which defendants signed with Taft were contingent upon Taft acquiring Vecchiarelli’s stock and clear recognition of his rights. (Bullock v. Cutting, 155 App. Div. 825, 829.) Defendants have not lost anything by his conduct except a hope' of sale which was always conditioned on prior rights of the corporation and Vecchiarelli.
Judgment is granted to plaintiffs for specific performance of the shareholders’ agreement. The order enjoining the stockholders’ meeting of March 17, 1970 is continued for 40 days from the date of the signing of an appropriate order herein together with service of a copy of the order and notice of entry on the nondefaulting defendants.