## Harcourt Wells, Inc. v. Cohen

184

*Stephen B. Narin, Stephen J. Popielarski, Helen S. Chait* and *Madeline Nesse,* for plaintiffs.

*Thomas A. Masterson* and *Joseph A. Torregrossa,* for defendants.

GELFAND, *J.*, March 30, 1978—The matters before the court are defendants' preliminary objections to the complaint in equity of Harcourt Wells, Inc., ("Harcourt") and the petition of Raymond G. Perelman ("Perelman") to intervene as a party-plaintiff.

The facts are as follows:

Perelman as president of Harcourt instituted an action in equity in its name and on its behalf. The complaint was filed on November 18, 1976, and among other things it alleges fraud, unlawful self-dealing, and misuse of corporate opportunities by defendants who include, inter alia, an officer of Harcourt, Harcourt's majority shareholders, its attorneys and its accountant.

On December 9, 1976, defendants filed preliminary objections to the complaint in the nature of a motion to strike and a petition raising the defense of a lack of capacity to sue.[1] The chief preliminary objection alleges that Harcourt lacks the capacity to sue, since Perelman, although president of Harcourt, brought this action on behalf of the corporation without obtaining its consent or authorization.

---

1. Rules 1017(b)(2) and (5) of Pa.R.C.P.

On December 29, 1976, Harcourt filed its answer to these preliminary objections, alleging that Perelman as president of the corporation had the authority as well as the duty to institute this action in view of the improper activities of defendants, many of whom had a fiduciary relation to the plaintiff corporation.

On October 10, 1977, during a purported shareholders' meeting, a new board of directors for Harcourt was chosen at the instigation of defendants, which board promptly elected a new president to replace Perelman and instructed the successor to take the necessary steps to terminate the litigation involved herein.

Two days later, Perelman as a shareholder in Harcourt filed his petition to intervene, alleging that Harcourt's interests in the litigation would not be protected by the new board because the suit would be discontinued.[2]

Defendants filed their answer to the petition to intervene on October 25, 1977. Discovery has been completed, briefs submitted, and the matters are now ready for determination.

## THE PRELIMINARY OBJECTIONS

The thrust of defendants' preliminary objections is that[3] section 1302 of the Pennsylvania Business

2. Also on October 12, 1977, in a related and pending action, Perelman filed a complaint in equity and sought injunctive relief with regard to the alleged "illegal" shareholder meeting and board of directors action taken on October 10, 1977, and to protect Harcourt's suit from being discontinued.

3. The preliminary objection's also include a motion to strike off complaint for lack of conformity to law and Pa.R.C.P.

Corporation Law of May 5, 1933, P.L. 364, as amended, 15 P.S. §§1001 et seq., prohibits a corporate officer from bringing suit in the corporate name. The basis for this view is that the said portion of the BCL provides that a corporation has the power "(2) [t]o sue and be sued, complain and defend, in its corporate name" and that: "Except as otherwise provided in this act . . . or in the by-laws, the powers enumerated in this section and elsewhere in this act shall be exercised by the board of directors of the corporation."

Accordingly, defendants argue that the aforesaid section of the BCL authorizes the board of directors *alone* to sue in the corporate name thereby precluding the president from doing so.

We do not agree with this argument.

Although this appears to be a case of first impression in Pennsylvania, in other jurisdictions it is an accepted principle that where there has been no direct prohibition, the president of a corporation has presumptive authority, in the discharge of his

---

1024 which we find to be without merit for the following reasons: (a) The failure of Perelman's affidavit to state that he is authorized by Harcourt to institute the action does not invalidate the verification. An officer normally verifies corporate pleadings and the specification of his position is sufficient compliance with Rule 1024 governing verification. See 2 Goodrich-Amram 2d, §1024(c):1; Monarch Co. v. Sylvania Mfg. Co., 2 Lyc. 157 (1950) (it is presumed that an officer's affidavit is on behalf of the corporation). (b) Although the affidavit fails to differentiate between contentions that Perelman verified upon knowledge and those verified on information and belief, the pleading makes this clear as it recites "information and belief" in the appropriate averments of the pleading itself. See 2 Goodrich-Amram 2d, §1024(a):4, footnote 23.

duties, to defend and prosecute suits in the name of the corporation: Cicero Industrial Dev. Corp. v. Roberts, 63 Misc. 2d 565, 312 N.Y.S. 2d 893 (Sup. Ct. Onandaga Co. 1970); West View Hills, Inc. v. Lizau Realty Corp., 6 N.Y. 2d 344, 189 N.Y.S. 2d 863 (1959).

Even though section 1302 of the BCL does not directly prohibit a corporate president from suing, the word "shall" as used would appear to make the section prohibitory. However, the words "Except as otherwise provided in this act or in the articles or in the by-laws" as used in the same sentence have a delimiting effect and would allow the power to sue to be exercised where permitted or authorized by the BCL, or the articles or by-laws of the corporation.

Article V, paragraph 4, of the by-laws of Harcourt states that the president " . . . shall have general and active management of the business of the corporation . . ." and that he " . . . shall have the general powers and duties of supervision and management usually vested in the office of President of a corporation."[4] Hence, it is the view of this court that the broad nature of these provisions made Perelman the general manager of Harcourt.

As the Cicero court stated, "If the president is the general manager of the corporation, there is little doubt that he has broad powers to sue under orthodox agency rules." 312 N.Y.S. 2d, supra, at 898. See Rothman & Schneider, Inc. v. Beckerman, 2 N.Y. 2d 493, 141 N.E. 2d 610 (1957) and Gillian v.

---

4. See Harcourt's by-laws in exhibit A of defendants' exhibits in support of defendants' preliminary objections.

Consolidated Foods Corp., 424 Pa. 407, 227 A. 2d 858 (1967): In Cicero, the court permitted the secretary-treasurer to sue in the corporate name where he assumed de facto the authority of the general manager and routinely exercised this authority. The record in the instant case shows that Perelman continually played an active and important role in the management and business of Harcourt. Further, Perelman's standing to bring this action on behalf of the corporation is stronger than that of plaintiff in Cicero inasmuch as Perelman had express and explicit authority under the corporate by-laws to manage the corporation. Hence, we conclude that although the by-laws did not specifically authorize Perelman to sue, the broad nature of the authority given to him in the management of the corporation includes such authority.

Also, Perelman maintains that a corporate officer has a fiduciary duty to act affirmatively to protect the corporation, and section 1408 of the BCL appears to substantiate the claim. This section provides that : "Officers . . . shall be deemed to stand in a fiduciary relation to the corporation." We agree that Perelman in his fiduciary capacity as president can institute suit in the corporate name under the facts of this case.

The preservation of the corporation's separate independent legal rights ought to be one of the highest aims of corporate officers, Cicero, supra, 312 N.Y.S. 2d at 898: see West View Hills, Inc., supra; and by establishing a general fiduciary duty in the president as a corporate officer, the BCL effectively obligates him to exercise the power to sue in the corporate name to preserve and protect the corporate rights and interests. Cf. Auction City,

Inc. v. Hostetter, 61 D. & C. 2d 744, 32 Beaver 182 (1973). The apparent purpose of the action instituted by Perelman in his capacity as president is to protect the corporate interests and prevent the alleged fraud and waste of the corporate assets.

Accordingly, in view of the fact that Perelman, as president, is cloaked with "general and active management of the business of the corporation," we find that there is also sufficent authority within the BCL to permit him to maintain this action on behalf of the corporation.

Therefore, the preliminary objections are hereby denied.

## THE PETITION TO INTERVENE

Pertaining to Perelman's petition to intervene, the issues presented are these:

I. Whether Perelman is permitted to intervene under Pa.R.C.P. 2327, and, if so,

II. Whether we should refuse intervention for any of the reasons enumerated in Pa.R.C.P. 2329.

### I.   Pa.R.C.P. 2327

Rule 2327 provides that:

"At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

"(1)  the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or

"(2)  such person is so situated as to be adversely affected by a distribution or other disposition of

property in the custody of the court or of an officer thereof; or

"(3) such person could have joined as an original party in the action or could have been joined therein; or

"(4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action."

It is evident Perelman may intervene if he meets any one of these four alternative criteria.

Accordingly, we find that Perelman may intervene under division (4) of the rule, because he has a legally enforceable interest that may be affected by the determination of the action.

This legally enforceable interest arises from the plan of complete liquidation that Harcourt adopted at the meeting of shareholders and directors of February 17, 1976, and which states in relevant part: "5. After the transactions [which include converting assets to cash and satisfying all outstanding liabilities and obligations and which are] referred to in Section 4 of this Plan have been effected, all remaining assets of the corporation shall be distributed in complete liquidation of the Corporation to the Shareholders, pro rata."[5] At the very least, Perelman has an interest insofar as his share of Harcourt's assets is concerned and as their value may be affected by the allegations set forth in the complaint.

Whether such an interest is "legally enforceable" is disputed by defendants, who contend that a

---

5. See resolutions and plan of complete liquidation of Harcourt Wells, Inc., in exhibit A of defendants' exhibits in support of defendants' preliminary objections.

minority shareholder can never litigate claims upon which the majority has refused to bring suit, citing S. Solomon & Sons Trust v. New England Th. Op. Corp., 326 Mass. 99, 93 N.E. 2d 241(1950); United Copper Securities Co. v. Amal. Copper Co., 244 U.S. 261 (1917); Post v. Buck's Stove & Range Co., 200 Fed. 918 (8th Cir. 1912).

These cases are clearly distinguishable as the shareholder majorities therein were disinterested, whereas in the instant matter the majority shareholders are among the defendants. Hence, their assent to their own alleged wrongdoing should not prevent Perelman from obtaining appropriate equitable relief: Von Arnim v. American Tubeworks, 188 Mass. 515, 518, 74 N.E. 680, 681 (1905); Brewer v. Boston Theatre, 104 Mass. 378, 395 (1870). Therefore, we find that Perelman has a legally enforceable interest, and there is no doubt that this interest would be affected by a determination in this lawsuit. See Mengel v. New Tripoli Nat. Bank, 156 Pa. Superior Ct. 434, 436-7, 40 A. 2d 859 (1945) (judgment-lien holder permitted to intervene in an action in ejectment because, inter alia, the value of his lien would be affected by the outcome of the action).

Accordingly, the conditions in Rule 2327(4) have been satisfied and intervention is appropriate.

## II.   Pa.R.C.P. 2329

However, defendants would seek to have intervention disallowed pursuant to Pa.R.C.P. 2329[6]

---

6. See Esso Standard Oil Co. v. Taylor, 339 Pa. 324, 330-31, 159 A. 2d 692 (1960) (intervention that is permitted by Pa.R.C.P. 2327(4) must be tested by Pa.R.C.P. 2329).

which states in relevant part:

"Upon the filing of the petition and after hearing, of which due notice shall be given to all parties, the court, if the allegations of the petition have been established and are found to be sufficient, shall enter an order allowing intervention; but an application for intervention may be refused if

"(2) the interest of the petitioners is already adequately represented; or

"(3) the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties."

Defendants contend that Perelman's interest is adequately represented by the corporation, and that he has unduly delayed in applying for intervention.[7]

In support thereof defendants argue the general rule that once a corporation brings suit, it represents the interests of the shareholders, who cannot then litigate the contested matters by bringing their own suit or by intervening in the corporate action, citing 13 Fletcher Cyclopedia Corporations, §5994, 450, Perm. Ed. (1970).

It is our view that this rule has no application to the facts of this case because defendants who now control the activities of Harcourt have indicated by

---

7. See Stroud v. Harper, 81 D. & C. 233, 66 Montg. 313 (1950) (it is within the sound discretion of the court to refuse intervention on the ground that petitioner's interest is already adequately represented); Templeton Appeal, 399 Pa. 10, 159 A. 2d 725 (1960) (the question of the timeliness of the intervention is within the periphery of the trial judge's discretionary domain).

board resolution[8] that they intend to terminate the legal action involved.

In Commonwealth Title Insurance & Trust Co. v. Seltzer, 227 Pa. 410, 418, 76 Atl. 77 (1910), our Supreme Court in considering this rule indicated that it is subject to exceptions and stated as follows:

" 'The rule that a shareholder cannot sue if the corporation is able to protect itself is a general one, founded on convenience and the implied agreement of the parties, that where a trustee is invested with active duties and represents numerous beneficiaries, no portion of these beneficiaries are entitled to bring a suit for the protection of the trust, *unless the trustee has refused, or is unable, to take the necessary steps to protect it on their behalf.*' Morawetz on Private Corporations (2d ed.), vol. 1, sec. 239." (Emphasis supplied.)

We find that the principle expressed in Seltzer applies to the matter herein and is broad enough to permit Perelman to protect his shareholder interest by intervening.

In addition, by granting Perelman's petition to intervene, the interests of judicial economy will be served and hardship and delay in deciding the issues thereby avoided. See Golconda Petroleum Corp. v. Petrol Corp., 46 F. Supp. 23 (S.D. Cal. 1942) (shareholders permitted to intervene for these reasons in order to avoid having to bring a separate independent shareholder action in state court, when defendants controlled plaintiff corporation and sought to terminate the lawsuit.)

---

8. See Harcourt Wells, Inc., meeting of board of directors of October 10, 1977, at 10:45 a.m. in exhibit G of defendants' exhibits in support of defendants' preliminary objections.

Consequently, corporate representation does not preclude Perelman from intervening.

Further, Perelman has not unduly delayed his application for intervention. His petition could not have been considered while the corporation adequately represented his interests. See 13 Fletcher, supra, §5994; Commonwealth Title Insurance & Trust Co., supra. In addition, it was filed without delay once defendants unveiled their plan to terminate the lawsuit: Com. ex rel. Chidsey v. Keystone Mutual Casualty Co., 366 Pa. 149, 76 A. 2d 867 (1950) (no undue delay where the interests of insurance policyholders were protected by a committee until it withdrew from the litigation, whereupon the policyholders promptly petitioned to intervene); Ackerman v. North Huntingdon Township, 425 Pa. 194, 228 A. 2d 667 (1967) (no delay where township, representing interests of property owners in the litigation, indicated it would not contest the chancellor's adverse findings, whereupon resident property owners petitioned to intervene to take exceptions).

Also, we perceive no prejudice to defendants from Perelman's intervention at this state of the proceedings; hence we see no basis to preclude him from intervening. Therefore, for all the above reasons we grant Perelman's petition to intervene.

Although in their briefs, defendants also raise questions as to procedure and the effect that intervention could have on the parties and joinder hereafter, we do not reach them inasmuch as they are not properly before us at this time.

Therefore, March 3, 1978, upon considering the briefs, exhibits and the record and for the aforementioned reasons, it is hereby ordered and decreed that preliminary objections of defendants

Sylvan M. Cohen, Cohen, Shapiro, Polisher, Shiekman & Cohen, Alma O. Cohen, Elizabeth Sharp, Robert Marcus, Brumar, Inc., Sharp Enterprises, Inc., Exchange Enterprises, Inc., Phyllis Simon, Elsie P. Langsam and Charlotte G. Grabois to plaintiff's complaint in equity are denied, and Raymond G. Perelman is permitted to intervene in this action as a derivative party-plaintiff upon the terms set forth in the petition for intervention.