**AMPETROL, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 93–676C.**

United States Court of Federal Claims.

March 6, 1997.

Peter R. Ginsberg, Washington, DC, for plaintiff. Benjamin L. Ginsberg and Michael J. Schaengold, Washington, DC, of counsel.

Franklin S. White, Jr., Department of Justice, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Anthony N. Anikeeff, Assistant Director, Washington, DC, for defendant.

### OPINION

BRUGGINK, Judge.

Pending in this unusual contract action is defendant's motion to dismiss, or in the alternative, for summary judgment. The complaint arises out of an alleged contractual relationship between plaintiff and Rossi Associates ("Rossi"), a business established by the Federal Bureau of Investigation (FBI) as part of an undercover investigation into illegal tax-free transfers of gasoline. The action was stayed during most of 1994 and 1995 to await the resolution of related criminal proceedings. Defendant now moves to dismiss on the ground that this action, nominally brought by Ampetrol, Inc. ("Ampetrol"), is in fact being brought without authority by its vice president. The alternative motion for summary judgment is premised on the assertion that the transactions alleged to create liability in fact never took place. For the reasons stated below, the motion to dismiss is denied and the motion for summary judgment is granted.

### Background

Ampetrol is a closely-held corporation, organized under the laws of the State of New York. The business of the company, until it ceased operations in 1992, was the wholesale buying and selling of gasoline in the New York–New Jersey area. Eighty percent of the stock of the corporation is owned by its president, Mr. Martin Nociforo. Twenty percent is owned by Mrs. Martin Rosenman. Mr. Martin Rosenman is vice president of

the company and he is on the board of directors, but he does not have an ownership interest. The company was operated on a day-to-day basis by Mr. Nociforo, at least until it ceased regular operations.

The FBI was concerned that the Government was being defrauded of excise taxes on wholesale transfers of gasoline through the operation of a scheme known as a "daisy chain." The daisy chain facilitated the avoidance of tax by concealing the obligation to pay in a series of fictitious transfers of gasoline to paper entities that were tax exempt. As part of a crackdown, the FBI established two undercover corporations, Rossi and Independent Petroleum Brokers, Inc. These entities were to aid the FBI in its investigation by inserting themselves in the daisy chain of fictitious transfers and thus obtaining incriminating information.

Many documents exist, which, under other circumstances, would support a contractual relationship between Ampetrol and Rossi. There are orders, invoices, shipment authorizations, and a ledger sheet. According to the ledger sheet, there is an outstanding account receivable due from Rossi of over $2.4 million. It is this account, along with the backup documentation, that forms the basis of the complaint.

The Government, in its motion for summary judgment, alleges that this paperwork was a sham; that there were no actual transfers of gasoline between Ampetrol and Rossi. These allegations are supported by proposed findings of fact, which in turn are based on a declaration by Mr. Nociforo, depositions of six individuals, and other supporting materials. Ampetrol disputes many of the Government's key proposed findings of fact, most notably that the transactions between Ampetrol and Rossi were a sham.

This action on behalf of the corporation was authorized by Mr. Rosenman, acting without the approval of the board of directors or the consent of Mr. Nociforo. Mr. Rosenman's interest in the action is a practical one. He personally guaranteed Ampetrol's line of credit with the bank. When Ampetrol's business failed, he paid off the banks and has recourse against the corporation. He has also conducted the company's affairs after Mr. Nociforo's conviction. Mr. Nociforo, who has not yet been sentenced on his criminal charges, is cooperating with the Government. He opposes the lawsuit.

The complaint has three counts. One alleges breach of an express contract. Another alleges breach of an implied-in-fact contract on the same terms. The final count alleges that the Government's actions as alleged constituted a taking of Rossi's property without compensation, in violation of the Fifth Amendment.

## Discussion

### 1. The Motion to Dismiss

The Government argues that the court lacks jurisdiction to hear the complaint because the corporation did not authorize the suit. It contends that, because Mr. Rosenman does not have authority to bring an action in the name of the corporation, the court should restyle the complaint with the vice president as plaintiff, and then dismiss it because he lacks privity to bring a contract claim.

Even if the undisputed facts permitted a finding that Mr. Rosenman cannot authorize a suit on behalf of the corporation, and even if he were substituted as plaintiff, dismissal for lack of jurisdiction would not be the proper remedy. A motion to dismiss for failure to state a claim or a motion for summary judgment might be appropriate. In any event, the court's reading of the applicable New York corporation law [1] leads it conclude that there is a triable fact issue as to whether Mr. Rosenman has the authority to initiate this proceeding. In view of the court's disposition of the motion for summary judgment, however, there is no need to further address the motion to dismiss.

### 2. The Motion for Summary Judgment

The Government does not allege that Ampetrol was organized for improper purposes.

1. See West View Hills, Inc. v. Lizau Realty Corp., 6 N.Y.2d 344, 189 N.Y.S.2d 863, 864, 160 N.E.2d 622, 623 (1959); Cicero Industrial Dev. Corp. v. Roberts, 63 Misc.2d 565, 312 N.Y.S.2d 893, 898 (N.Y.Sup.Ct.1970).

Nor does it contend that Mr. Rosenman was aware of Mr. Nociforo's illegal activities. Nor does it contend that no gasoline existed to support the illegal transactions. Ampetrol, for its part, does not dispute that Ampetrol was drawn by Mr. Nociforo into participating in the illegal daisy chain scheme or that Rossi was part of the daisy chain.

What the Government does allege that is disputed by Ampetrol is that contracts entered into between the parties were not bona fide. The Government relies heavily on the declaration of Mr. Nociforo. He explains the scheme, insofar as it relates to Rossi as follows:

Rossi never placed an order for gasoline with Ampetrol and Ampetrol never entered a contract with Rossi for the purchase or sale of gasoline. Rather the putative sales to Rossi from Ampetrol were false and fictitious. As with all invoices to intermediate companies, the invoices from Ampetrol to Rossi were used solely to create a paper trail to disguise the tax liability for Ampetrol's motor fuel sales to unregistered purchasers.... The accounts receivable account held by Ampetrol in Rossi's name was fictitious. Rossi never bought any gasoline from Ampetrol and, therefore, never owed Ampetrol any money. The outstanding accounts receivable held in Rossi's name on Ampetrol's books was actually reduced by payments made by the unregistered purchasers, not Rossi.... Rossi was simply an intermediate company used by Ampetrol to create the appearance that it was purchasing and selling gasoline when in fact unregistered parties (parties without an IRS form 637) were purchasing gasoline from Ampetrol.

If this statement is true, then the complaint is without grounds. There were no contracts to enforce.

Ampetrol urges the court to either ignore the Nociforo declaration, or, at a minimum, treat it as creating only a triable fact question. It contends that Mr. Nociforo is unreliable as a witness because he is an admitted felon and, because he is awaiting sentencing, he is more likely to color his statements to suit the Government's interests. The court might agree with plaintiff but for two other phenomenon. The first is that Mr. Nociforo is not alone in his assertions. They are fully supported in the deposition of Mr. James Kinsley, an FBI special agent who served as lead case agent for the operation. He confirmed the relationships between Ampetrol and Rossi in the daisy chain scheme. More critically, he testified that Rossi "didn't purchase anything. Ampetrol would bring in the product, and [ultimate] customers would pull the product into the terminal. Rossi's license was just used in the process. Rossi was inserted in the daisy chain below Ampetrol to facilitate the scheme." Dep.Tr. at 82. Mr. Kinsley explained that the "invoices" were a sham, created by Rossi on information furnished by Mr. Nociforo. Rossi never made direct payments to Ampetrol. *Id.* at 89. This picture of events is also supported by another FBI special agent, Ms. Ann Paradiso, who worked as a bookkeeper for Rossi.

Ampetrol's corporate secretary and controller, Mr. Louis Harris, explained that Mr. Nociforo, who worked in a different office, would tell Ampetrol employees, by telephone, which accounts receivable would be credited for receipts which had been acknowledged by Ampetrol's bank. Mr. Harris does not recall ever seeing a check from Rossi. The ledgers, in short, are totally unreliable as proof of actual payments made by Rossi. Similarly, Mr. Harris explained that the invoices were generated solely on Mr. Nociforo's oral instructions. He testified that no one from Rossi ever called his office to order gasoline.

Perhaps the strongest support for Mr. Nociforo's allegations that the transactions were a sham is the fact that he pleaded guilty on charges that are fully consistent with his recent declaration and deposition. It is alleged in the indictment that the invoices between Ampetrol and Rossi are false. Rather than causing the court to question Mr. Nociforo's veracity, in other words, his conviction strengthens his current averments.

The second phenomenon is the lack of support for the existence of a valid contractual obligation in Ampetrol's response to the motion. Ampetrol's refusal to stipulate to the key proposed findings attached to the Government's motion is predicated solely on the paper trail created during the conspiracy.

In his deposition testimony, Mr. Rosenman candidly concedes that he has no personal knowledge with which to challenge the overwhelming evidence that no valid contracts ever arose between Rossi and Ampetrol. Instead he points to the invoices, shipping authorizations, and accounts receivable. Mr. Rosenman takes these materials at fact value, but the court cannot, in view of the clear evidence that they were a fraud.

The Government's proposed findings of fact are well-supported. They had the effect of shifting to Ampetrol the obligation to create a triable issue on the question of whether valid contracts existed between the Government and Ampetrol. It has failed to do so.[2] The sworn statements of Messrs. Nociforo, Kinsley and Harris, along with that of Ms. Paradiso, are unrebutted by any comparable evidence. Their testimony establishes that the plaintiff's only counter-evidence, the paper trail, is false.[3]

### Conclusion

The Government's motion to dismiss is denied. The motion for summary judgment is granted. The Clerk is directed to dismiss the complaint. No costs.

---

2. It follows that all three counts of the complaint fail. There were no contracts, express or implied. The account receivable from Rossi was therefore fictitious and could not have been "taken" by the Government.

3. It is unnecessary to address the Government's alternative contention that the claim should be forfeited pursuant to 28 U.S.C. § 2514 (1994).