**TRANSAMERICA DELAVAL INC., Plaintiff,**

v.

**CITIBANK, N. A., Defendant.**

No. 81 Civ. 6459 (HFW).

United States District Court, S. D. New York.

July 23, 1982.

Guggenheimer & Untermyer, by Robert E. Smith, Norman L. Greene, New York City, for plaintiff Transamerica Delaval Inc.

Shearman & Sterling, by Henry Harfield, New York City, for defendant Citibank, N. A.

## MEMORANDUM DECISION

WERKER, District Judge.

Plaintiff, Transamerica Delaval Inc. ("Delaval"), commenced this action to recover from defendant, Citibank, N. A. ("Citibank"), $2,809,333.00 deducted from its account to cover a payment by Citibank pursuant to the letter of credit [1] agreement between the parties entitled Clean Sight Credit Application and Agreement (the "Credit Agreement"). The parties have cross-moved for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, plaintiff's motion is denied and defendant's motion is granted.

While differing as to their legal significance, the parties are in essential agreement as to the salient facts, which may be stated briefly as follows. On December 9, 1975 Delaval entered into a contract (the "Contract") with Electrical Work and Maintenance ("EWM") for the sale of diesel-powered electrical generators to be constructed by Delaval. In order to secure Delaval's performance, the contract provided that Delaval would establish with Citibank's Saudi Arabian Branch in Jeddah

---

1. A letter of credit transaction typically involves three separate and distinct contracts: (1) the contract between the issuing bank and its customer whereby the issuing bank agrees to issue the letter of credit to the beneficiary (usually the seller); (2) the main contract between the seller and the buyer whereby the seller agrees to obtain payment under a letter of credit pursuant to a proper demand in compliance with its terms; (3) the letter of credit itself, which is a contract between the issuing bank and the beneficiary whereby the issuing bank agrees to pay the drafts drawn under the letter of credit upon proper demand.

("FNCB Jeddah") an irrevocable letter of guarantee for $2,809,833.00 in favor of EWM payable through Banque du Caire.

In accordance with the Credit Agreement between the parties, Citibank's predecessor, First National City Bank, on November 13, 1975 issued a letter of credit in favor of FNCB Jeddah to support the letter of guarantee issued by FNCB Jeddah. Thereafter, Saudi American Bank ("Samba"), succeeded to the rights and liabilities of FNCB Jeddah under the letter of credit and letter of guarantee. The letter of credit, in relevant part, provided:

EFFECTIVE IMMEDIATELY EXPIRING YOUR OFFICE JULY 31, 1978 UNDER WHICH CASE NEED YOU MAY DRAW ON US MENTIONING OUR CREDIT NO. K–312184 ACCOMPANYING YOUR DRAWING WITH YOUR STATEMENT THAT YOU WERE REQUIRED TO DISBURSE THE AMOUNT THEREOF UNDER YOUR UNDERTAKING.

The letter of credit and the letter of guarantee were later extended. The letter of credit was extended with Delaval's consent to September 30, 1981 and accordingly has since expired.[2] The letter of guarantee was extended with Delaval's consent to August 31, 1981, and apparently by Samba to August 31, 1982 without Delaval's consent.

◼ A dispute between Delaval and EWM arose respecting Delaval's performance under the Contract. On or about July 21, 1981, EWM wrote to Banque du Caire stating that Delaval had failed to fulfill its contractual obligations and instructed Banque du Caire to obtain an extension of the letter of guarantee up to August 31, 1982. On September 1, 1981 Samba sent to Citibank the third in a series of similar telexes requesting either an extension of the guarantee or payment of the full value of the guarantee. Samba's September 1, 1981 telex in part stated:

BENE [EWM] HAS REFUSED REFUSED TO ACCEPT GTEE EXTENSION OF 6 MONTHS STP THEY HAVE GIVEN US TILL THURSDAY I.E. SEPT. 03.81 EITHER TO EXTEND GTEE TO ONE YEAR OR PAY THEM USDLR 2,809,333.00 STP WE WILL AWAIT YOUR INSTRUCTIONS TILL THEN IF WE DO NOT HEAR FROM YOU FUNDS WILL BE PAID THEREFORE EITHER ARRANGE EXTENSION OR CREDIT OUR ACCOUNT FOR VALUE OF UR LC STP ANY DELAY FROM SEPT 03.81 ONWARD WILL BE PAID WITH INTEREST STP HOPE TO RECEIVE A POSITIVE REPLY STP

Upon being informed by Delaval that it would not consent to an extension of the letter of guarantee, on September 2, 1982 Citibank honored Samba's demand for payment under the letter of credit and accordingly paid to Samba $2,809,333.00.[3]

After being informed that the funds in Delaval's Citibank account were insufficient to cover the amount paid by Citibank to Samba under the letter of credit, Delaval transferred to its Citibank account $2,500,000.00 on September 2, 1981. Citibank obtained full reimbursement of its payment

**2.** The original letter of credit was also amended to include the following provision: "(A) FUNDS UNDER OUR PROTECTIVE CREDIT ARE TO BE AVAILABLE TO YOU AGAINST YOUR QUOTE FIRST WRITTEN NOTICE ACCORDING TO YOUR ABSOLUTE JUDGMENT OF A FAILURE IN MEETING THE CONDITIONS OF THE ABOVE QUOTE THEREBY JUSTIFYING SUCH REQUEST . . ." Citibank does not argue that this amendment in some way negates or modifies any of the original terms of the letter of credit.

**3.** Before honoring the letter of credit, Matthew Gault, Vice President of Citicorp (U.S.A.), Inc., spoke to William S. Hagar, Legal Counsel and Assistant Secretary of Delaval, concerning Samba's request for an extension, or in the alternative, demand for payment. Mr. Gault avers that Mr. Hagar on behalf of Delaval declined to consent to the extension and stated "I guess you'll have to pay." It is undisputed, however, that at that point in time Mr. Hagar had not reviewed Samba's September 1, 1981 telex. Thus, there could have been no intentional and voluntary waiver by Delaval of its rights under its contract with Citibank to have a proper demand for a payment by the beneficiary before Citibank honored the letter of credit. *See International Leather Distributors, Inc., v. Chase Manhattan Bank,* 464 F.Supp. 1197 (S.D.N.Y.1979).

to Samba by debiting this deposit accordingly. Apparently, Samba is currently in possession of the funds paid by Citibank under the letter of credit.

## DISCUSSION

I am mindful that in passing upon a motion for summary judgment, "the court cannot try issues of fact; it can only determine whether there are issues to be tried." *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272 (2d Cir. 1967), and that the affidavits and exhibits submitted by the parties "must be viewed in the light most favorable to the party opposing the motion." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444–45 (2d Cir. 1980).

■ However, although summary judgment is never lightly granted, it has been recognized that letter of credit disputes are frequently appropriate for final adjudication upon submission of papers and affidavits. *Data General Corp. v. Citizens National Bank of Fairfield*, 502 F.Supp. 776, 779 (D.Conn.1980). This is so undoubtedly because these disputes usually present legal issues relating to an exchange of documents rather than questions of fact. *Id.* Thus, in view of the fact that the parties here merely "dispute the significance of the events." *Data General Corp. v. Citizens National Bank of Fairfield, supra*, 502 F.Supp. at 779 (D.Conn.1980) but do not dispute which events actually occurred, I believe that summary resolution of this controversy is appropriate.

■ The central issue presented by this case is whether Samba's demand upon Citibank for payment, contained in its telexes of August 6, 1981, August 31, 1981 and September 1, 1981, was in compliance with the conditions specified in the letter of credit issued by Citibank. If the demand for payment complied with the letter of credit, Citibank's payment pursuant to that demand was proper. However, if the demand did not comply with the terms of the letter of credit, Citibank's payment was wrongful and it thereby breached its contract with

Delaval. For such a breach, Citibank would be liable for damages in the amount charged to Delaval's account as a result of the wrongful payment. *Interco, Inc. v. First National Bank of Boston*, 560 F.2d 480, 485 (1st Cir. 1977).

U.C.C. § 5–103(1)(a) defines a letter of credit as follows:

> ... an engagement by a bank or other person made at the request of a customer and of a kind within the scope of this Article ... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit.

The parties disagree as to the standard that should be applied in judging whether Samba's demand was in "compliance with the conditions specified in the credit." Delaval, while arguing that the demand failed to comply under any standard, contends that a demand must strictly comply with the terms of the letter of credit. *Chase Manhattan Bank v. Equibank*, 550 F.2d 882 (3d Cir. 1977); *International Leather Distributors, Inc., v. Chase Manhattan Bank*, 464 F.Supp. 1197, 1201 (S.D.N.Y.), *aff'd*, 607 F.2d 996 (2d Cir. 1979).

Citibank, on the other hand, argues that a strict standard should only apply when suit is brought against the issuer by the beneficiary of the letter of credit. Where suit is brought against the issuing bank by its customer, however, Citibank contends that "the demand need only substantially comply with the material requirements of the letter of credit." This is a so-called "bifurcated standard", which turns upon the party bringing suit. *Far Eastern Textile, Ltd. v. City Nat'l Bank and Trust*, 430 F.Supp. 193, 196 (S.D.Ohio 1977).

■ The commentators and the courts have noted that the "Uniform Commercial Code failed to specify 'whether strict compliance [with the terms of the letter] is necessary or whether substantial performance will do,' although it 'should have' done so." *Far Eastern Textile, Ltd. v. City Nat'l Bank and Trust, supra*, 430 F.Supp. at 196 (quoting J. White & R. Summers, Uniform

Commercial Code § 18–6 at 620 (1972)). Whether a "strict compliance" or a less stringent "substantial performance" standard is employed here is of particular moment, since I am of the opinion that Samba's demand while not literally or strictly in accordance with the language of the letter of credit, did substantially comply with the terms of the letter of credit such that Citibank's payment pursuant to that demand was reasonable and proper under the circumstances. I conclude that application of a substantial compliance test in the context present here is a better view for the following reasons.

Delaval's cause of action rests upon its Credit Agreement with Citibank, not the letter of credit issued by Citibank to FNCB Jeddah (later succeeded by Samba). While the letter of credit was clearly contemplated by the Credit Agreement, it is an independent contract. *Foreign Venture v. Chemical Bank*, 59 A.D.2d 352, 355–56, 399 N.Y.S.2d 114, 116 (1st Dep't 1977).

In the Credit Agreement, Delaval did not insist upon or even specify particular language which would constitute a proper demand for payment by the beneficiary under the letter of credit. By failing to set forth specific language, Delaval necessarily relied upon Citibank to establish the language which would constitute a proper demand for payment by the beneficiary. Citibank assumed the responsibility for establishing the required demand in its letter of November 13, 1975 and telex of December 1, 1975, which set forth the terms of the letter of credit between FNCB Jeddah (succeeded by Samba) and Citibank.

Having failed to specify the language to be contained in the demand pursuant to the letter of credit, it is unreasonable for Delaval to insist upon strict compliance with the language which Citibank selected and determined in good faith had been substantially complied with. If Delaval sought precise compliance with particular language, it was incumbent upon Delaval to

set forth the precise language it desired. This it could have done in the space contained in the Credit Agreement which allowed for "Remarks".

■ The letter of credit stated that the demand must include a statement that "YOU [Samba] WERE REQUIRED TO DISBURSE THE AMOUNT THEREOF UNDER YOUR UNDERTAKING." Samba's August 6, 1981 telex stated: "WE ARE REQUESTED BY THE BENEFICIARIES TO EXTEND THE SUBJECT GUARANTEE FOR FURTHER ONE YEAR ... PLS TELEX US YOUR COUNTER GUARANTEE APPROVAL FOR THE REQUESTED EXTENSION OR CONSIDER THIS OUR DEMAND FOR FULL VALUE OF THE GUARANTEE". The September 1, 1981, telex,[4] from Samba stated "BENF HAS REFUSED TO ACCEPT GTEE EXTENSION FOR 6 MONTHS STP THEY HAVE GIVEN US TILL THURSDAY I.E. SEPT 03, 81 EITHER TO EXTEND GTEE TO ONE YEAR OR PAY THEM ... STP WE WILL AWAIT UR INSTRUCTIONS TILL THEN IF WE DO NOT HEAR FROM YOU FUNDS WILL BE PAID THEREFORE EITHER ARRANGE EXTENSION OR CREDIT OUR ACCOUNT FOR VALUE OF UR LC STP ANY DELAY FROM SEPT 03, 81 ONWARD WILL BE PAID WITH INTEREST" There can be little doubt that by virtue of these telexes Samba was indicating to Citibank in no uncertain terms that it would pay the guarantee by September 3 and that it was demanding that if Citibank did not obtain an extension of the letter of credit then Citibank was to pay the letter of credit.

■ In the face of Samba's demand, I cannot find that Citibank's payment was wrongful. In the course of normal banking practices, Citibank cannot be held responsible for Samba's failure to disburse the funds under its letter of guarantee after representing on September 1 that if the extension was not obtained "FUNDS WILL BE PAID". Though not named as a party

---

4. Citibank argues that Samba's two earlier "pay or extend" telexes of August 6 and 31, 1981 should be read with Samba's September

1, 1981 in determining whether Samba's demand complied with the letter of credit. I have considered all three telexes.

here, it is clear to this court that, based on the facts before it, the wrongdoer in this transaction, if there is one, is Samba for failing to follow through on its representation to pay funds pursuant to the letter of guarantee.[5]

Accordingly, Delaval's motion for summary judgment is denied and Citibank's cross-motion for summary judgment is granted. There being no just cause for delay, defendant is directed to submit an appropriate judgment on notice within 10 days from entry of this order

SO ORDERED.

5. Citibank raises a number of other issues in support of its cross-motion. In view of my ruling on the demand for payment issue, technically I need not reach these issues. Nevertheless, for clarity of the record I note that I find Citibank's arguments to be without merit.

Citibank argues that the Credit Agreement relieves it from liability to its customer, Delaval, for wrongful payment to the beneficiary of the letter of credit. Specifically, Citibank contends that two sections of the Credit Agreement, namely, line "E" and paragraph eight, relieve it from liability for wrongful payment. Line "E" of the Credit Agreement provides in part:

Note: It is understood that, if your [Citibank's] credit is issued in favor of any commercial entity which is to issue a commitment on your behalf in connection herewith, the Obligor(s) [DeLaval] shall remain liable on this credit until you [Citibank] are released by such entity.

Paragraph eight of the Credit Agreement provides that:

The Bank, and its branches, affiliates and/or correspondents, shall not be liable or responsible in any respect for any: (a) error, omission, interruption or delay in transmission, dispatch or delivery of any one or more messages or advices in connection with the Credit, whether transmitted by cable, radio, telegraph, mail or otherwise and despite any cipher or code which may be employed, or (b) action, inaction or omission, which may be taken or suffered by it or them in good faith or through inadvertence in identifying or failing to identify any beneficiary(ies) or otherwise in connection with the letter of Credit.

In my opinion, neither of the above-quoted provisions of the Credit Agreement purports to, much less is capable of, releasing Citibank from liability to its customer for wrongful payment on a letter of credit. Line E has no bearing on Citibank's liability to its customer for wrongful payment. Line E merely ensures that Citibank's liability on the letter of credit terminates prior to its customer's liability in the normal course of the transaction.

Paragraph eight of the Credit Agreement, by its own terms, is limited in section (a) to liability in connection with the transmission of "messages" and in section (b) to liability in connection with the "identifying or failing to identify any beneficiary(ies)". There is no claim here that Citibank is liable due to a failure to either properly transmit messages or identify a beneficiary.

In any event, even if paragraph eight purports to insulate Citibank from liability for a wrongful payment under the letter of credit, it is invalid. U.C.C. § 5–109(2) provides that "[a]n issuer must examine documents with care so as to ascertain that on their face they appear to comply with the terms of the credit ....", and U.C.C. § 1–102(3) provides that "[t]he effect of provisions of this Act may be varied by agreement ... except that the obligation[s] of ... care prescribed by this Act may not be disclaimed by agreement ...." Thus, the U.C.C. does not allow Citibank to avoid liability for a wrongful payment pursuant to a demand by the beneficiary that failed to comply with the terms of the letter of credit, even if the payment was made "in good faith or through inadvertence".