OPINION OF THE COURT
Lynch, J.
Defendant Pillsbury Company contracted to sell to the plaintiff 50,000 metric tons of corn destined for shipment from a Gulf of Mexico port to a Black Sea port and resale to the Soviet Union. To provide payment, plaintiff obtained two letters of credit, one by the defendant Trade Development Bank with the defendant Republic National Bank as advising bank, the other by Banque de la Mediterranee with the defendant Fidelity International Bank, the confirming bank. Payment on the letters has been refused. The propriety of this refusal has been raised by cross and counterclaims in this action in which United Commodities-Greece ultimately withdrew its complaint. The trial court found that the documents submitted by Pillsbury to trigger payment did not conform to the requirements of the letters. It ruled against Pillsbury and in favor of Republic and Trade Development Banks. It held, however, that Fidelity had waived any claim of nonconformity and it awarded judgment for Pillsbury against it, with judgment over to Fidelity against United Commodities. The Appellate Division modified by striking the judgment against Fidelity and the judgment over, and granting judgment in Fidelity’s favor, holding that there had been no waiver on its part. We affirm.
Trade Development Bank seeks to raise as a threshold question whether that provision of the Appellate Division’s order unanimously affirming the judgment in its favor may be appealed by Pillsbury. We decline to entertain the question since it has previously been decided (see, United Commodities-Greece v Fidelity Intl. Bank, 62 NY2d 884).
Page one of each letter of credit specified the documents to be presented for payment, presupposing the loading of the corn on a vessel nominated by United Commodities prior to November 30, 1976. Following these requirements was a “Special Conditions” clause, activated by a failure to so nominate a vessel. It provided: “[BJeneficiary may draw, not before December 10, 1976, against this letter of credit upon presentation of a warehouse or dock receipt issued to order accompanied by a bank guarantee that beneficiary will load the goods on first demand of orderer *455 and remit to the negotiating bank, free of charges, the covering Bill of Lading.” The letters were to expire on December 15,1976. United Commodities failed to nominate a vessel prior to November 30th.
Both respondent banks, Fidelity and Trade Development, argue that presentation of the page one documentation was required by the letters even though payment was sought under the eventuality provided for in the “Special Conditions”. The trial court did not agree and neither do we. The letters are unambiguous. They express alternative payment procedures, the page one documents to be provided upon loading on a vessel nominated prior to November 30th, the “Special Conditions” documents to be triggered by the failure to nominate a vessel. If the parties intended the page one documents to be applicable to the “Special Conditions” eventuality, they could readily have included the necessary language. It is not the function of the court to insert such a provision (see, Janos v Peck, 21 AD2d 529, 533, affd 15 NY2d 509; Frankel v Tremont Norman Motors Corp., 21 Misc 2d 20, 22, affd 10 AD2d 680, affd 8 NY2d 901).
New York requires strict compliance with the terms of a letter of credit (see, Anglo-South Am. Trust Co. v Uhe, 261 NY 150; Eximetals Corp. v Pinheiro Guimaraes, S.A., 73 AD2d 526, affd 51 NY2d 865), rather than the more relaxed standard of substantial compliance (see, 6 Hawkland, Uniform Commercial Code Series § 5-114:03). The rule finds justification in the bank’s role in the transaction being ministerial (see, Eximetals Corp. v Pinheiro Guimaraes, S. A., supra) and to require it to determine the substantiality of discrepancies would be inconsistent with its function. Strict compliance means that “the papers, documents and shipping directions must be followed as stated in the letter” (Anglo-South Am. Trust Co. v Uhe, supra, at pp 156-157). “No substitution and no equivalent, through interpretation or logic, will serve. Harfield, Bank Credits and Acceptances (5th Ed. 1974), at p. 73, commends and quotes aptly from an English case: ‘There is no room for documents which are almost the same, or which will do just as well.’ Equitable Trust Co. ofN. Y. v. Dawson Partners, Ltd., 27 Lloyd’s List Law Rtps. 49, 52 (1926).” (Courtaulds North Am. v North Carolina Natl. Bank, 528 F2d 802, 806; see also, Eximetals Corp. v Pinheiro Guimaraes, S. A., 73 AD2d, at p 527, supra.) Applying these standards, we hold that the bank guarantees provided by Pillsbury were fatally nonconforming to the “Special Conditions” because they omitted any obligation arising from a Pillsbury failure to “remit to the negotiating bank, free of charges, the covering Bill of Lading.”
*456 When United Commodities failed to nominate a vessel, Pillsbury, on December 6,1976, delivered to Republic National Bank and Fidelity International Bank drafts on the letters of credit, warehouse receipts postdated to December 10, and a draft of a proposed bank guarantee which notably imposed an obligation for Pillsbury’s failure to remit the covering bill of lading, free of charges. This “preview” was to allow the banks an opportunity to review the documents before they were formally presented on the first due date. On December 8, Republic claimed the documents were nonconforming. Fidelity made no comment. On December 9, United Commodities commenced this action against Fidelity and Republic, but did not allege nonconformity because the executed bank guarantees were not yet submitted. It claimed that the validity of the letters hung on the corn’s shipment to the Soviet Union, which was rendered impossible by that Nation’s refusal to issue an import license. On the same day the plaintiff obtained a temporary order restraining payment of the letters pending its motion for a preliminary injunction.
On December 10, Pillsbury submitted the formal documentation. The bank guarantees omitted the obligation regarding a failure to remit to the negotiating bank, free of charge, the bill of lading, Republic persisted in its claim of nonconformity. Fidelity made no response directly to Pillsbury but, on December 13, its executive vice-president, Grayson, in an affidavit opposing United Commodities’ motion for a preliminary injunction, stated that Pillsbury’s papers were in “substantial compliance” and that the bank would have paid on the letter had it not been for the temporary restraining order. On December 14, Pillsbury submitted further documentation but the bank guarantees were substantially the same as those submitted on December 10. An attorney for Pillsbury testified that he talked to Grayson on the evening of December 14 and was told that Pillsbury’s papers were in order. Grayson recalled no such conversation. On December 15, Fidelity sent a telex to the issuing Banque de la Mediterranee that it had “accepted” the bank guarantee and quoted its language. United Commodities thereafter amended its complaint, with Pillsbury named as an intervening defendant, alleging the nonconformity of Pillsbury’s documents. Fidelity then answered the amended complaint and cross-claimed against Pillsbury, putting conformity into issue for determination by the court.
It appears that, from December 10 to the amendment of United Commodities’ complaint alleging nonconformity, Fidelity mistakenly believed there was'strict conformity. We hold, as *457 did the Appellate Division, that this cannot constitute a waiver of the right to strict conformity. Since there is no proof that Fidelity knew the guarantee did not strictly conform to the “Special Conditions” and elected not to take advantage of this knowledge (see, Glenesk v Guidance Realty Corp., 36 AD2d 852), there has been no “ ‘intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it’ ” (Werking v Amity Estates, 2 NY2d 43, 52, quoting Whitney on Contracts, at 273 [4th ed 1946]). This is not a case in which, for example, a bank, knowing that documents were nonconforming, nonetheless, and after so informing the presenter, accepted the documents and paid on the letter, thus intentionally and knowingly relinquishing its right to strict compliance.
Alternatively, Pillsbury contends Fidelity should be es-topped from asserting the nonconformity of the guarantee. To take advantage of estoppel, Pillsbury would have to prove that it relied to its detriment on a misleading representation of the bank (see, Werking v Amity Estates, supra, at p 53). The record contains no evidence of any representation on which Pillsbury relied to its detriment. The telex from Fidelity to Banque de la Mediterráneo was not a representation to Pillsbury; it did not know of it. Pillsbury did not rely on the Grayson affidavit of December 13 that its documents were in substantial compliance because it submitted further documentation the next day.
There remains the alleged conversation on the evening of December 14 between Grayson and Pillsbury’s attorney. Pillsbury claims that it relied on Grayson’s statement that its papers were in order and consequently was lulled into inactivity the following day, the expiration date of the letter. The trial court, however, did not find this conversation ever occurred, nor did the Appellate Division. Assuming the conversation did occur, Pillsbury cannot be held to have relied on the statement because it failed to introduce any evidence that it would have been able, in the day remaining, to have cured the defect in the guarantee had Fidelity brought it specifically to its attention.
For the reasons stated, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Jasen, Meyer, Simons and Kaye concur; Judge Alexander taking no part.
Order affirmed, with costs.

 Designated pursuant to NY Constitution, article VI, § 2.